IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD CROSBY, ) | |
| ) | |
| ) | No. 12-CV-5622 |
| Plaintiff, ) | |
| v. ) | Honorable Judge Joan B. Gottschall |
| ) | |
| OFFICER EDUARDO GONZALEZ #15231, ) | Honorable Magistrate Judge Mary M. Rowland |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff Ronald Crosby ("Crosby"), by and through his attorneys, Edwards Wildman Palmer LLP, and pursuant to Federal Rule of Civil Procedure 8, for his First Amended Complaint, states as follows:

**SUMMARY OF THE ACTION**

1. Crosby brings this action to recover civil damages for harm he suffered as a result of Defendant Officer Eduardo Gonzalez's ("Gonzalez") violations of Crosby's constitutional rights while Gonzalez was in pursuit of Crosby on December 31, 2010. Crosby seeks compensatory and punitive damages, as well as recovery of attorneys' fees and costs.

**PARTIES**

2. Plaintiff Crosby is a citizen of the state of Illinois and currently resides at the Danville Correctional Center, 3820 East Main St., Danville, Illinois 61834. His Illinois Department of Corrections inmate number is #R05400.

3. Defendant Gonzalez is a citizen of the state of Illinois and currently resides in Chicago, Illinois. His City of Chicago Police Officer star number is #15231. Defendant Gonzalez is being sued in his individual capacity.

## JURISDICTION AND VENUE

4. Jurisdiction over the subject matter is proper in this Court pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States. Crosby brings this action pursuant to 42 U.S.C. § 1983 to remedy violations of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

5. Jurisdiction over Defendant Gonzalez is proper in this Court because Gonzalez resides in Chicago, Illinois.

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant Gonzalez resides in this judicial district and a substantial part of the events giving rise to the claims herein occurred within this judicial district.

## FACTS COMMON TO ALL COUNTS

7. The facts supporting Crosby's claims involve an altercation between Crosby and members of the Chicago Police Department on December 31, 2010, at 1119 S. Mozart St., Chicago, Illinois 60612.

8. On the day of the altercation, Ronald Crosby was living in the front, second-floor apartment at 1119 S. Mozart St. with his girlfriend, Keona Montgomery, and their children. Ms. Montgomery's mother, Judy Montgomery, had been living with the couple for several weeks prior to December 31, 2010, and had been serving as a babysitter.

9. When Crosby awoke on the morning of December 31, 2010, he discovered that Judy Montgomery had brought an individual into the couple's apartment the previous night and

that this unknown individual was sleeping on the couple's couch. Crosby asked this unknown individual to leave the apartment.

10. Upset that Crosby had caused this unknown individual to leave the apartment, Judy Montgomery exited the apartment. Crosby asked Keona Montgomery to check on her mother, Judy. Crosby later learned that Judy Montgomery had called the police and had requested them to respond to an alleged domestic disturbance at the apartment.

11. Because Crosby and Keona Montgomery believed that there was an active warrant out for Crosby's arrest from a previous, unrelated incident, they agreed that Keona would talk to the police if the police attempted to enter the premises. Crosby retreated to the front, third-story apartment at 1119 S. Mozart St., which was being renovated and which Keona and Crosby planned to move into when renovations were complete.

12. Upon information and belief, Keona Montgomery spoke with Officer Gloria Tirado outside the apartment and attempted to explain the situation to her. Upon questioning from Officer Tirado, Keona Montgomery maintained that Crosby was not in possession of a gun.

13. Officer Tirado entered the front, second-floor apartment, and was later joined by two additional police officers, Officer Gonzalez and Officer Humberto Munguia. The officers searched the apartment. Realizing that Crosby was no longer in the second-floor apartment, the three police officers then proceeded up a stairway connecting the second and third floors.

14. Officers Gonzalez, Munguia, and Tirado entered the back door of the front, third-floor apartment and immediately pursued Crosby.

15. In the apartment, Gonzalez approached Crosby with his gun drawn toward Crosby. Gonzalez instructed Crosby to show his hands. Gonzalez then grabbed Crosby by the collar near the front door of the apartment and attempted to throw Crosby to the ground.

16. Despite Gonzalez's efforts to sling Crosby to the ground, Crosby did not immediately go to the ground. Gonzalez and Crosby briefly wrestled and ended up in a bedroom on the south-end of the apartment, with Officers Tirado and Munguia watching from the entrance of the bedroom.

17. Gonzalez then shoved Crosby directly toward a window located at the south end of the bedroom. The force of Gonzalez's shove caused Crosby to break through the window and screen, and tumble three stories to the concrete walkway below. Upon belief, Gonzalez shoved Crosby with the intent to force him out of the window.

18. When Crosby's body slammed to the ground, his left hand came into contact with the ground first in an attempt to break the fall. Following the incident, a large pool of blood could be found on the concrete walkway.

19. As a result of being shoved through the glass window and falling three stories, Crosby suffered injuries to his backbone and L1 and L2 discs; lacerations on his head; injuries to his left wrist, and to the fingers, knuckles, tendons, and nerves on his left hand; damage to his nervous system and sweat glands, such that he only sweats on the left side of his body; and mental anguish causing nightmares and disruptions to his sleep.

20. Crosby's injuries required extensive surgeries in the weeks following the incident. Crosby has also had to seek mental health treatment from the Illinois Department of Corrections because of the damages he suffered.

## COUNT I: IMPROPER ENTRY
### (U.S. CONST. amends. IV, XXIV, and 42 U.S.C. § 1983)

21. Crosby repeats and re-alleges the allegations contained in paragraphs 1 through 20 as if fully restated here.

22. Officer Gonzalez, along with Officers Tirado and Munguia, entered and searched the front, second-floor apartment without a warrant.

23. Crosby had a reasonable expectation of privacy in the front, second-floor apartment because he resided at the apartment with his girlfriend and children.

24. No exigent circumstances for searching the apartment were present.

25. Because Gonzalez's warrantless search was performed in the absence of exigent circumstances and without consent, the search violated Crosby's rights guaranteed under the Fourth and Fourteenth Amendments of the Constitution.

26. When Gonzalez violated these rights, he acted under the color of law in his position as a member of the City of Chicago police force.

27. As a result of these constitutional violations, Crosby has suffered damages.

## COUNT II: EXCESSIVE FORCE
(U.S. CONST. amends. IV, XXIV, and 42 U.S.C. § 1983)

28. Crosby repeats and re-alleges the allegations contained in paragraphs 1 through 20 as if fully restated here.

29. When Gonzalez shoved Crosby with the intent of sending him through the third-story window at 1119 S. Mozart St., Gonzalez used an unreasonably excessive level of force.

30. Because this excessive level of force was unreasonable under the circumstances, Gonzalez's actions violated Crosby's rights guaranteed under the Fourth and Fourteenth Amendments of the Constitution.

31. When Gonzalez violated these rights, he acted under the color of law in his position as a member of the City of Chicago police force.

32. As a result of these constitutional violations, Crosby has suffered damages.

## REQUEST FOR RELIEF AND JURY TRIAL DEMAND

33. Crosby respectfully requests that the Court enter judgment in his favor and against Defendant Gonzalez, and award the following relief:

    a. Compensatory damages for pain and suffering, and for past, present, and future medical and pharmaceutical expenses.

    b. Punitive damages for Gonzalez's malicious and intentional actions.

    c. Attorneys' fees pursuant to 42 U.S.C. § 1988.

    d. Costs pursuant to 42 U.S.C. § 1920.

    e. Such further relief as this Court deems equitable and just.

34. Crosby demands a jury trial.

Dated: October 3, 2013                                          Respectfully submitted,

                                                                               /s/ Frank Blechschmidt
                                                                               One of the Attorneys for Plaintiff
                                                                               Ronald Crosby

Jerald P. Esrick
Frank Blechschmidt
EDWARDS WILDMAN PALMER LLP
225 W. Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 201-2000
(312) 201-2555 (FAX)

## CERTIFICATE OF SERVICE

This is to certify that, on October 3, 2013, the undersigned attorney caused a true and correct copy of **Plaintiff's First Amended Complaint** to be electronically filed with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Frank Blechschmidt
One of the Attorneys for Plaintiff
Ronald Crosby